1  JAMES A. QUADRA, State Bar No. 131084
   jquadra@quadracoll.com
2  REBECCA M. COLL, State Bar No. 184468
   rcoll@quadracoll.com
3  QUADRA & COLL, LLP
   649 Mission Street, 5th Floor
4  San Francisco, California 94105
   Telephone:  (415) 426-3502
5  Facsimile:  (415) 795-4530
6
7  *Attorneys for Plaintiffs*
8
9           UNITED STATES DISTRICT COURT FOR THE
10               NORTHERN DISTRICT OF CALIFORNIA
11
   NEAL SCHON, MICHAELE SCHON, and          Case number:
12 N & M PRODUCTIONS, INC.,
                                            **COMPLAINT**
13          Plaintiffs,
14     vs.                                  **JURY TRIAL DEMANDED**
15 CITY AND COUNTY OF SAN
   FRANCISCO, PHILIP GINSBURG in his
16 individual and official capacity, DANA
   KETCHAM in her individual capacity, and
17 DIANE REA in her individual capacity,
18          Defendants.
19
20
21
22          1.      This Complaint is brought by Plaintiffs Neal and Michaele Schon, and N & M

23 Productions, Inc., fka Schon Productions, against Defendants City and County of San

24 Francisco ("City"), Philip Ginsburg in his individual and official capacity, Dana Ketcham in

25 her individual capacity, and Diane Rea in her individual capacity.  Defendant City granted

26 Ginsburg, Ketcham and Rea unfettered discretion to set fees for permits to use City

27 property.  The City's statutory scheme for setting permit fees is unconstitutional because it

28 grants such unbridled discretion to administrators.  In addition, Ketcham, Ginsburg and Rea

unlawfully used that unfettered discretion to arbitrarily discriminate against Plaintiffs based simply on who they are, their perceived economic status, and their exercise of their free speech rights.

## PARTIES

2.      Plaintiff Neal Schon is an individual residing in the State of California.

3.      Plaintiff Michaele Schon is an individual residing in the State of California.

4.      Plaintiff N & M Productions, Inc. formerly known as Schon Productions, is a California corporation with its principal place of business in the State of California.

5.      Defendant City and County of San Francisco is a municipality in the State of California.

6.      Defendant Philip Ginsburg is the General Manager of the San Francisco Recreation and Parks Department.

7.      Defendant Dana Ketcham is a Permits and Reservations Manager at the San Francisco Recreation and Parks Department.

8.      Defendant Diane Rea is an Events and Facilities Specialist at the San Francisco Recreation and Parks Department.

## JURISDICTION AND VENUE

9.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331 and 1343 because this case arises under the United States Constitution, and Plaintiffs seek to recover damages and to secure equitable and declaratory relief under 42 U.S.C. Section 1983.  The Court should exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367(a) because they are so related to the Federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper pursuant to 28 U.S.C. 1391(b)(1) and (b)(2) because Defendant City and County of San Francisco is a municipality within this district, on information and belief all individual Defendants reside in this District, and the events that give rise to this complaint happened in this district.

**FACTUAL ALLEGATIONS**

11.    Plaintiffs Neal and Michaele Schon have deep roots in San Francisco.  Neal Schon, who spent much of his childhood in San Francisco, is the lead guitarist and a founder of Journey.  Journey's song, *Lights*, written by Steve Perry and Neal Schon and widely known to refer to San Francisco, is routinely played at San Francisco Giants games in the City, as is Journey's *Don't Stop Believin'*.  The San Francisco 49ers also routinely played *Don't Stop Believin'*.  Neal has played throughout San Francisco since he was 14 years old. Prior to forming Journey in 1973, Neal was the second lead guitarist with the band Santana, which grew out of San Francisco, from 1970-1972.  Given Neal's long history with San Francisco, when Neal and Michaele decided to get married, they thought that a wedding at the Rotunda of the Palace of Fine Arts would be a meaningful and beautiful setting to celebrate their love with their friends and family.  Section 12.07 of San Francisco's Park Code provides that the Rotunda may be rented for a wedding for a $350 fee, plus $100 per hour.

12.    On September 19, 2013, Plaintiffs Neal and Michaele Schon, by and through their event planner Sacks Productions ("Sacks") submitted an application with the San Francisco Recreation & Parks Department for a "Special Event Permit" to use the Rotunda for a wedding on December 15.

13.    In addition to using the Rotunda, the Schons wished to hold a reception in the adjacent building known as the old Exploratorium building, which was then occupied by Town School for Boys ("Town School") via a long term lease from Defendant City.  The permit application included a request for use of Town School for the Schons' reception.  In order ensure that more than adequate time was allowed to set up and take down the tables, stage, and related material, together with clean up, Sacks estimated that the set-up and take-down would last from December 11-16.

14.    In September 2013, Defendants indicated that the City was amenable to holding the wedding at the Rotunda with the reception at Town School, and had multiple communications with Sacks regarding plans and procedures.

15.     The City was aware from the outset that there may be television coverage at the wedding by, for example, Entertainment Tonight or other programs on network television.

16.     In September, October and November 2013, City employee Diane Rea, whom on information and belief was acting at the direction of Ginsburg and Ketcham, advised the Plaintiffs that the total permit fee would be $10,000 per day, plus the cost for extra City staff to be on site, plus the cost of renting the adjacent building from Town School, which Defendants stated must be arranged separately with Town School.  This proposed fee was excessive and arbitrarily set, and in early December 2013 Rea, apparently acknowledging that it was excessive, indicated she was attempting to lower the fee to charge $10,000 for the day of the wedding, and $5,000 for each set-up and take-down day, plus the cost of additional staff at the site.  Such fees, if charged, would also have been excessive and arbitrarily set.  Neither Rea nor any other City employee explained the basis for the proposed fee.  To the extent the fee was based on considerations set forth in San Francisco Parks Code Section 12.22(g), the fee was unconstitutional.

17.     On October 9, 2013, Defendants became aware that Plaintiffs had issued a press release disclosing where and when the Schons' wedding would take place.  The press release did not invite participation in the wedding or the wedding reception by the public—it simply gave notice of the wedding.  In response, Rea emailed Sacks and noted that the wedding location was no longer a secret, and asked if guests would still be shuttled in from another location.  Rea offered the option of using a valet at the Palace of Fine Arts, and to use nearby Marina Green to park the cars.  Despite their knowledge of the press release, Defendants did not reject Plaintiffs' application to rent the Rotunda for the purposes of the carrying out the wedding or Town School for the reception.

18.     In November 2013, at Defendants' direction, Plaintiffs successfully entered into a contract with Town School to sublicense Town School (the building adjacent to the Rotunda) to hold their wedding reception, including musical performances, at a cost of

$32,000, plus $22,000 to send the school on field trips, for a total of $54,000.  The wedding reception was to and did take place entirely within the walls of this sublicensed building.

19.     On or about November 20, 2013, Plaintiffs entered an agreement with Pay-Per-View's production agent to broadcast the Schons' wedding and reception.  On the same day, November 20, 2013, Plaintiffs' representative asked the City whether a filming application was needed for TV cameras.  In response, the City provided a link to information on applying for a film permit.

20.     On November 21, 2013, Plaintiffs, by and through their agent, submitted a filming permit application to the City for a "Wedding for TV."  Plaintiffs' plan was to broadcast their wedding and reception on Pay-Per-View.

21.     After reviewing Plaintiffs' filming permit application, Jim Jackson, the City's Film and Photo Coordinator at the Permits and Reservations Division, stated that "everything looked good" and that the permit fee was $587.  The sum of $587 was the City's current fee for film permits for low impact TV programs.

22.     On or about November 24, 2013, the City imposed a requirement that Plaintiffs obtain a liability insurance policy against, among other things, property damage arising from the wedding.

23.     On November 25, 2013, the press picked up that the wedding would be shown on Pay-Per-View with a portion of the proceeds obtained from the telecast going to typhoon relief efforts in the Philippines.

24.     On information and belief, within a few days thereafter, but prior to December 3, 2015, Defendants became aware of the Schons' plans to broadcast their wedding and reception through Pay-Per-View.  Defendants had previously known that the wedding would be broadcast on television, but had not asked who would broadcast it, and apparently did not realize that it would be offered through Pay-Per-View.

25.     On December 5, 2013, Defendants issued the wedding permit but did not release it to Plaintiffs.

26.     On December 6, 2013, just nine days before the wedding, Defendants still did not release the wedding permit and instead expressed for the first time "much concern about the pay-per-view advertising."

27.     On or about December 8, 2013, the City told Plaintiffs it did not want Pay-Per-View to broadcast the Wedding Event, and declined to release the permit.

28.     On December 9, 2013, several days after the permit had been issued but before it was released, Ketcham noted that "the fee for the event day is $10,000 plus $5000 per day for any setup days. The total fees including staff for the wedding are $58,090.40. There are very high staffing fees to secure the space. **We are still determining what the fees for the film permit for pay for view will be**." (Emphasis added).  Ketcham also noted she did not want "a commercial event at this historic venue."

29.     Later on December 9, 2013, Ketcham told Plaintiffs' attorney that Defendants would allow Pay-Per-View to broadcast the wedding but only if Plaintiffs would pay a "commercial permit fee" of $25,000, as well as a $200,000 donation to a nonprofit organization, the Maybeck Foundation, for the anniversary of the Palace, in addition to the other permit fees.  The City would not release the permit without the extra fees and forced donation.

30.     On or about December 13, 2014, after multiple communications, including contact from Plaintiffs' representative pointing out that it was not legal for the City to force private parties to make a charitable donation, the City finally released the permit to Plaintiffs, but only in exchange for the outrageously high additional fees described in detail below.  The permit application had been pending for almost three months.  Moreover, the City had issued the permit a week before, but had refused to release it.  Plaintiffs' event was still a private wedding in the Rotunda with a private reception with music in the adjacent building subleased from Town School, an event any private couple could have planned.  The only difference between the Schons' event and any other wedding and reception was that the Schons were broadcasting their wedding and reception on television through Pay-Per-View.

31.     Nonetheless, the City would release the event permit and the film permit on December 13, 2014 only after receiving a hugely and arbitrarily increased payment from the Schons.  Defendants' sudden imposition of exorbitant fees, first sprung on Plaintiffs just six days before their wedding, left Plaintiffs with no choice but to pay the fees.  Defendants thus essentially extorted Plaintiffs into making massive payments to save their wedding from cancellation.

32.     The film permit arbitrarily restricted the date for still photos to occur only on December 13, 2013.  Defendant Ketcham told Plaintiffs' agent in advance of issuing any permits that the City would not approve allowing still photos to be taken on the day of the wedding.

33.     Under the terms of the event permit, the following restrictions were imposed for the day of the wedding:

    a.  No amplified sound is permitted in the Rotunda except from 5 p.m. to 6 p.m. and only for human speech and string orchestra;

    b.  The decibel level in the Rotunda may not exceed 80 decibels;

    c.  Amplified sound in the adjacent building where the reception would be held must remain low enough so that it cannot be heard outside of the building, and may not exceed 90 decibels inside the building.

    d.  No more than 356 participants are permitted to attend the wedding.

**Fees**

34.     After the Schons' attorney resisted the City's attempted forced donation to the Maybeck Foundation, the City revised its calculations of fees to make sure the Schons had to pay the City more than that amount.

35.     The permit required Plaintiffs to pay $5,000 per day in use fees, except for the date of the wedding itself, for which Defendants charged Plaintiffs $10,000.  These amounts were 10 times the next highest amount charged for the same space since 2010, with the exception of one event in March 2014, wherein there appeared to be a $5,000 charge.

Plaintiffs requested information on that event pursuant to San Francisco's Sunshine Ordinance, but received nothing in response.

36.     In addition to the purported rental fees totaling $35,000, Defendants also charged $23,311.84 to pay for 306 hours of extra work by City employees with no support for this alleged additional work, plus a $100,000 "premium reservation fee," and a $50,000 "Park Regeneration Fee," all totaling $208,311.84.  This total fee was more than 200 times the next highest fee ever paid for the use of the Palace of Fine Arts.

37.     In addition, Defendants also demanded a fee for a film permit allowing filming at the Rotunda and inside the Town School building, which was presumably already included when the Schons reached an agreement with Town School.  The permit included a purported "Rental Fee" of $25,000 for the building, even though Town School had already been paid directly for use of the building.  The $25,000 permit fee, which allowed filming for 4 hours on December 15, 2013 inside tents and in the Exploratorium Building, was 100 times the amount of the fee charged for a 6 hour filming permit in the same building three months later.  It was also more than fifteen times the next highest amount charged for filming in the Rotunda since 2010, and many times more than the film permit fees commonly charged by the Film Commission for commercial filming in the City (including the filming of *Dawn of the Planet of the Apes*, which had a $1.5 million filming budget, and paid a $1,200 permit fee for filming and an $815 street cleaning fee).  It was *42 times* the $587 fee quoted to the Schons at the time of the permit application, which was the published minimum fee for a film permit for low impact television programs, and 21 times the published minimum fee for "larger TV programs, commercials and feature films involving exclusive use of park areas, crowd control and/or major props or set dressing."  This fee, when added to the foregoing others fees, brought the total fees to be paid to release the permit to $233,311.84.  Defendants required this amount to be paid via a cashier's check prior to release of the permit.  In addition, Plaintiffs were required to hire their own security force, including directly paying San Francisco Police Officers to work at the event.

38.     In addition, Defendants told Plaintiffs it expected them to also donate $50,000 to the charity identified by Ketcham, the Maybeck Foundation.

39.     During the time period when Defendants were setting the improper and illegal permit fees for Plaintiffs, Defendants also "clarified" the City's lease with Town School to ensure it would receive 15% of the proceeds Town School received from Plaintiffs, in addition to the fees Defendants collected directly from Plaintiffs.  Plaintiffs paid a total of $59,199.70 to Town School to use its premises and send the schoolchildren on a field trip.

40.     Despite the insurance requirement referenced above and the exorbitant fees, the City also required a $100,000 "security deposit," which it later unreasonably delayed returning to Plaintiffs.

41.     Plaintiffs did not make the additional donation to the Maybeck Foundation Defendants illegally attempted to require, and Defendants realized they could not force private citizens to donate to charities of Defendants' choice.  However, Plaintiffs did make the following unconscionable payments in order to obtain the permit, plus additional amounts after the wedding as follows:

| Date | Purpose | Amount |
|---|---|---|
| Payments to City and County of San Francisco: | | |
| December 12, 2013 | Fees | $233,311.84 |
| February 21, 2014 | Parking Fees | $3,055.00 |
| Subtotal – CCSF | | **$236,366.84** |
| Payments to Town School for Boys: | | |
| November 27, 2013 | Rental fee | $32,000.00 |
| November 27, 2013 | Payment for field trip for children of school | $22,000.00 |
| February 21, 2014 | Miscellaneous security and other costs | $4,399.70 |
| February 21, 2014 | Contractor cost for removal/replacement of railing | $800.00 |
| Subtotal – Town School | | **$59,199.70** |
| **Grand Total** | | **$295,566.54** |

On information and belief, Defendant City and County of San Francisco received $236,366.84 plus fifteen percent of most or all of the fees collected by Town School for Boys, for a grand total in excess of $240,000.  Defendants also complied with requirements from Defendants to hire San Francisco Police Officers as extra security for the event.

42.     Because Defendants claimed some of these payments were required as a result of the Pay-Per-View program, a portion of the amounts paid were by Plaintiff N & M Productions which was then known as Schon Productions.

43.     On December 14, 2013 in response to complaints from affluent disgruntled neighbors residing near the Palace of Fine Arts, some of whom were disdainful of the bride and groom and objecting to their having use of the Palace of Fine Arts at all, Phil Ginsburg correctly noted that the guests at the wedding totaled less than half the capacity of the Palace of Fine Arts theatre.

44.     On December 15, 2013, the wedding took place.  Defendants prohibited the Schons from taking still photographs of themselves or their wedding party outside the confines of the tent in the Rotunda on their wedding day.  The photographer was not even allowed to photograph the bride approaching the tented area in her gown.  No photographs of the Palace of Fine Arts were permitted, even if taken by third parties.

45.     Defendants placed content-based restrictions on Plaintiffs as to the use of Town School.  Plaintiffs created a theme at their reception of Royal, Sexy, Magic, and wished to entitle one of the rooms at Town School, "Sexy."  The room was tastefully decorated.  Defendants prohibited Plaintiffs from using the room.  Defendants expressed distaste for the stated theme of the room and concern that the room would suggest profane or pornographic thematic elements.  Defendants thus punished Plaintiffs for their exercise of their free speech rights.

46.     After the wedding, the Schons held their reception in the adjacent building subleased from Town School.  Bands played at the wedding reception inside Town School. The City confirmed during a sound check that the music could not be heard outside the building.  The reception was a private reception, televised on Pay-Per-View.  There was no

traffic impact on the neighborhood beyond what one would normally expect for any other wedding at the Palace of Fine Arts, or any other event at the Palace of Fine Arts theatre.

47.     In the weeks following the wedding, Defendants delayed return of the Schons' $100,000 security deposit, claiming the facility needed to be power washed.  The Schons arranged for the power washing to take place and Defendants returned their security deposit. Defendant City and County of San Francisco also sent Plaintiffs an invoice for an additional alleged amount due of $1,139.04 for alleged additional staff time.  On information and belief, Defendant continues to wrongly allege this amount is due from the Schons.

48.     None of the fees charged by Defendants were lawfully set fees.  Instead, they were arbitrarily determined by Defendants, based on illegal and discriminatory factors, including Defendants' perception of Plaintiffs' financial condition and their choice to broadcast their wedding on Pay-Per-View.  Defendant City unlawfully allowed Ginsburg, Ketcham and Rea unfettered discretion to set these fees.

49.     Each of the acts alleged herein were done by Defendants under color and pretense of the ordinances, regulations, customs and policies of the City and County of San Francisco.

50.     As a result of the foregoing wrongful actions, Plaintiffs Neal and Michaele Schon suffered emotional distress.  Plaintiffs should have been excited and happy in the days leading up to their wedding.  Instead, they were being extorted by Defendants. Plaintiffs felt they had no choice but to pay the illegal fees Defendants demanded days before their wedding was to take place, and continued to suffer distress after their wedding regarding these matters.  Plaintiffs remain upset about how they were treated by Defendants.

51.     In addition, Plaintiffs are at risk for suffering the same discrimination and infringement of their rights in the future if they seek to obtain permits to use public property or rent facilities in the future.  Defendants continue to stand by their illegal conduct and have provided no assurances that it will not be repeated in the future.

**FIRST CAUSE OF ACTION**

**28 U.S.C. § 2201 - DECLARATORY RELIEF- FACIAL**

**UNCONSTITUTIONALITY OF ORDINANCE BASED ON FIRST**

**AMENDMENT AND FOURTEENTH AMENDMENT**

(AGAINST DEFENDANT CITY AND COUNTY OF SAN FRANCISCO)

52.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

53.     Section 12.07 of San Francisco's Park Code provides that the Rotunda may be rented for a wedding for a $350 fee, plus $100 per hour.

54.     Section 12.22 of San Francisco's Park Code provides as follows:

Section 12.22:  The following fees shall be charged for use of the parks for events:

(a)   Special and Athletic Event permit fees per day.

| Park Venue | Commercial Fee | Non-Profit Fee* | | |
|---|---|---|---|---|
| | | 2008-09 25% | 2009-10 35% | 2010-11 50% |
| GGP Lindley Meadow | $10,000 | $2,500 | $3,500 | $5,000 |
| GGP Speedway Meadow | $18,000 | $4,500 | $6,300 | $9,000 |
| GGP Marx Meadow | $2,500 | $625 | $875 | $1,250 |
| GGP Sharon Meadow | $12,000 | $3,000 | $4,200 | $6,000 |
| GGP Polo Field | $50,000 | $12,500 | $17,500 | $25,000 |
| GGP Music Concourse | $2,500 | $625 | $875 | $1,250 |
| Civic Center Plaza | $25,000 | $6,250 | $8,750 | $12,500 |
| Justin Herman Plaza | $7,000 | $1,750 | $2,450 | $3,500 |
| Marina Green East | $7,500 | $1,875 | $2,625 | $3,750 |
| Marina Green West | $800 | $200 | $280 | $400 |
| Jerry Garcia Amphitheater | $3,200 | $800 | $1,120 | $1,600 |
| Portsmouth Square | $500 | $125 | $175 | $250 |

| Union Square | $7,500 | $1,875 | $2,625 | $3,750 |
| Washington Square | $3,200 | $800 | $1,120 | $1,600 |
| Mission Dolores Park | $12,000 | $3,000 | $4,200 | $6,000 |
| Precita Park | $5,000 | $1,250 | $1,750 | $2,500 |
| Other sites | $1.00/person times venue capacity | * | | |

* Non-profit fees will be phased in at the following rate: 25% of the Commercial Fee in Fiscal Year (FY) 2008-2009; 35% of the Commercial Fee in FY 2009-2010; and 50% of the Commercial Fee in FY 2010-2011 and thereafter.

(b)   Gated Events – Applicable venue permit fee or 25% of the gate receipts, whichever is greater.

….

(d)   Athletic Events requiring a road closure – $1.00 per participant.

(e)   Concession Fee – An amount equal to 5% of the gross sales receipts as determined by sales tax documentation that is provided by the Permittee to the California State Board of Equalization to be paid within 30 days following the event.

….

 (g)   Impact Fees to compensate the Department for the anticipated impact on park property and/ or services, the disruption of normal park usage and the inconvenience to the public, because of the type of event, the location, the number of expected participants and other similar factors.

….

55.      Section 12.22 is unconstitutional because:

a.   Subsection (g) grants unfettered discretion to administrators to determine how much to charge for a permit.  There are no articulated standards in the City's established practice for setting fees, and the City's longstanding practice is to allow administrators to use their own unfettered discretion to set fees.  Administrators are not required to rely on any objective factors, and their decisions are unreviewable.  Subsection (g) therefore violates the First and

Fourteenth Amendments pursuant to *Forsythe County v. Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395 (1992).

b.   In addition, Subsection (a) is unconstitutionally vague as to what constitutes a "Special Event" and the meaning of the term "Commercial," neither of which is defined anywhere in the Code.  There is no provision in the Code to determine whether an event like the Schons' wedding and private reception constitutes a "Commercial" event or a "Wedding."  The ordinance is so vague and indefinite, in form and as interpreted, as to permit within the scope of its language the charging of punitively high fees to individuals whose conduct falls within the protection of the guarantee of free speech and equal protection.  Subsection (a) therefore violates the First and Fourteenth Amendments.  The Schons' event was a wedding pursuant to Section 12.07, and the Schons should have been charged according to that ordinance, but relying on the vagueness and illegality of Section 12.22, the City charged the Schons illegal and excessive fees.

56.   Plaintiffs were charged illegal fees based on the whims and illegal considerations of Defendant Ginsburg, as well as the whims and illegal considerations of Ketcham and Rea, which were ratified by Ginsburg in his official capacity.

57.   Because Section 12.22 violates the Constitutional guarantees of the First Amendment and Fourteenth Amendment of the United States  Constitution, Plaintiffs are entitled under 28 U.S.C. §§ 2201 to a declaratory judgment declaring that Section 12.22 is unconstitutional, or in the alternative must be interpreted in particular ways as prescribed by this Court so as to be Constitutional.

58.   Wherefore, Plaintiffs pray for the relief set forth below.

**SECOND CAUSE OF ACTION**

**42 U.S.C. 1983 - FACIAL UNCONSTITUTIONALITY OF ORDINANCE**

(AGAINST DEFENDANT CITY AND COUNTY OF SAN FRANCISCO)

59.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

60.     San Francisco Parks Code Section 12.22 is unconstitutional because:

    a.   Subsection (g) grants unfettered discretion to administrators to determine how much to charge for a permit.  There are no articulated standards in the City's established practice for setting fees, and the City's longstanding practice is to allow administrators to use their own unfettered discretion to set fees. Administrators are not required to rely on any objective factors, and their decisions are unreviewable.  Subsection (g) therefore violates the First and Fourteenth Amendments pursuant to *Forsythe County v.  Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395 (1992).

    b.   In addition, Subsection (a) is unconstitutionally vague as to what constitutes a "Special Event" and the meaning of the term "Commercial," neither of which is defined anywhere in the Code.  There is no provision in the Code to determine whether an event like the Schons' wedding and private reception constitutes a "Commercial" event or a "Wedding."  The best reading of the Code is that the Schons' event was a wedding, and the Schons should have been charged accordingly, but relying on the vagueness and illegality of the City's codes, the City charged the Schons illegal and excessive fees.

61.     Because Section 12.22 violates the Constitutional guarantees of the First Amendment and Fourteenth Amendment of the United States Constitution, Plaintiffs were charged illegal and excessive fees for their permit.

62.     Plaintiffs Neal and Michaele Schon also suffered emotional distress as a result of being subjected to the unconstitutional whims of Defendant's administrators, which was caused by the unconstitutionality of Section 12.22.

63.     Wherefore, Plaintiffs pray for the relief set forth herein.

**THIRD CAUSE OF ACTION**

**42 U.S.C 1983 - EQUAL PROTECTION (CLASS OF ONE) –**

**INDIVIDUAL DEFENDANTS**

(AGAINST DEFENDANTS GINSBURG, KETCHAM AND REA)

64.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

65.     In addition to discrimination based on economic status and other broad classifications, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prohibits discrimination against a "class of one," where the plaintiff is arbitrarily and intentionally treated differently from others for no legitimate reason.  When an individual is singled out by the government, the Equal Protection Clause requires a rational basis for the difference in treatment.

66.     Defendants Ginsburg, Ketcham and Rea imposed fees on Plaintiffs that were many times more than the fees charged to other individuals for similar permits, without rational basis.

67.     Unlawfully singling out Plaintiffs, Defendants imposed the unjustifiable and outrageous fees because of (a) Defendants' dissatisfaction with, and personal opinions about, Plaintiffs' decision to broadcast their wedding on Pay-Per-View, (b) Defendants' view of whether Plaintiffs' wedding was the type of event that was acceptable to them and deserving of taking place at the Palace of Fine Arts, or was crass and in their view too "commercial." and (c) Defendants' perception of Plaintiff's economic status and fame.

68.     Defendants also restricted Plaintiffs' ability to take photographs on the day of their wedding and the content of such photographs by prohibiting them from taking any photographs showing any part of the Palace of Fine Arts, regardless of whether the photographs were taken by a paid photographer or not.  Defendants were forced to black out any backgrounds showing the Palace of Fine Arts, even though many other couples who

have been married at the Rotunda have been allowed to have and use photographs of the wedding at the Rotunda.

69.     Defendants Ginsburg, Ketcham and Rea arbitrarily and intentionally treated Plaintiffs differently from how they treated other members of the public who sought permits to use the Palace of Fine Arts based on who Defendants perceived Plaintiffs to be and based on Defendants' malicious motives of discrimination and to punish Defendants for using Pay-Per-View of which they disapproved.

70.     Defendants Ginsburg, Ketcham and Rea did not set Plaintiffs' permit fees based on objective factors as required by law.  Instead, Defendant City had a policy and practice of delegating unfettered discretion to its employees including Defendants Ginsburg, Ketcham and Rea to set permit fees without narrowly drawn, reasonable and definite standards.  Defendant City's policy and practice was to leave the decision of how much to charge for the permit to the whim of the administrators.  There are no articulated standards in the City's established practice for setting fees, and the City's longstanding practice is to allow administrators to use their own unfettered discretion to set fees.  Administrators are not required to rely on any objective factors, and their decisions are unreviewable.  Plaintiffs were charged illegal fees based on the whims and illegal considerations of Ginsburg, Ketcham and Rea.

71.     Defendants set the permit fees for Plaintiff without regard to any guidelines set forth in City ordinances, and merely based on Defendants' own whims and biases.

72.     As a result of Defendants Ginsburg, Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda, and suffered emotional distress.

73.     Wherefore, Plaintiffs pray for the relief set forth herein.

**FOURTH CAUSE OF ACTION**

**42 U.S.C 1983 – EQUAL PROTECTION (CLASS OF ONE) –**

**MONELL LAIBILITY**

(AGAINST DEFENDANT CITY)

74.    Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

75.    Defendant City had a policy and practice of delegating unfettered discretion to its employees to set permit fees without narrowly drawn, reasonable and definite standards. Defendant City's policy and practice was to leave the decision of how much to charge for the permit to the whim of the administrators.  There are no articulated standards in the City's established practice for setting fees, and the City's longstanding practice is to allow administrators to use their own unfettered discretion to set fees.  Administrators are not required to rely on any objective factors, and their decisions are unreviewable.  Defendant City's failure to set and enforce policies regarding setting of fees caused Defendants to impose the unjustifiable and outrageous fees because of (a) Defendants' dissatisfaction with, and personal opinions about, Plaintiffs' decision to broadcast their wedding on Pay-Per-View, (b) Defendants' view of whether Plaintiffs' wedding was the type of event that was acceptable to them and deserving of taking place at the Palace of Fine Arts, or was crass un their view and too "commercial," and (c) Defendants' perception of Plaintiff's economic status and fame.

76.    The unconstitutional actions set forth above were ratified by Defendant Ginsburg acting in his official capacity as General Manager of the San Francisco Recreation and Parks Department, and the final decision maker of the Recreation and Parks Department.

77.    In addition, Plaintiffs allege that the unconstitutional actions by Ginsburg, Ketcham, and Rea were caused by inadequate and arbitrary training, supervision and discipline of these individual defendants by their employer City and County of San Francisco.

78.     As a result of Defendant City's unlawful policies and practices, and Defendant Ginsburg's wrongful and malicious actions, and the ratification by Defendant Ginsburg of Defendants Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda, and suffered emotional distress.

**FIFTH CAUSE OF ACTION**

**42 U.S.C 1983 – FIRST AMENDMENT – INDIVIDUAL DEFENDANTS**

(AGAINST DEFENDANTS GINSBURG, KETCHAM AND REA)

79.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

80.     Defendants Ginsburg, Ketcham and Rea charged an unreasonably high fee to Plaintiffs based on its motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by the First Amendment.

81.     In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were not paid by Plaintiffs, in violation of the First Amendment.

82.     In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted a violation of the First Amendment.

83.     As a result of Defendants Ginsburg, Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda and the adjacent Town School, and suffered emotional distress.

**SIXTH CAUSE OF ACTION**

**42 U.S.C 1983 – FIRST AMENDMENT – MONELL LAIBILITY**

(AGAINST DEFENDANT CITY)

84.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

85.     Defendant Ginsburg either charged or ratified Ketcham and/or Rea's charges of unreasonably high fees to Plaintiffs based on his motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by the First Amendment.

86.     In addition, Plaintiffs allege that the unconstitutional actions by Ginsburg, Ketcham, and Rea were caused by inadequate and arbitrary training, supervision and discipline of these individual defendants by their employer City and County of San Francisco.

87.     Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were not paid by Plaintiffs, which constituted a violation of the First Amendment.

88.     In addition, Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted a violation of the First Amendment.

89.     In addition, Defendant City and/or Defendant Ginsburg had an established policy and practice of restricting the use of the Palace of Fine Arts to only events that Ginsburg and/or lower level administrative employees felt were acceptable to them and viewed as non-commercial and in their opinion worthy of the Palace, without any rational basis for such decisions, and instead just the gut feeling of Ginsburg and City employees. Such policy allowed the Palace of Fine Arts to be used for such "undesirable" events if the

Complaint

permit seeker would pay unlawful and arbitrary large sums of money to the City and its chosen charities.  This policy violates the First Amendment.  Plaintiffs were the victims of this policy in that Defendants forced them to pay exorbitant fees for their wedding and reception.

90.     As a result of Defendant Ginsburg's ratification of the foregoing wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda and the adjacent Town School, and suffered emotional distress.

**SEVENTH CAUSE OF ACTION**

**42 U.S.C 1983 – EQUAL PROTECTION – DISCRIMINATION BASED ON SPEECH – INDIVIDUAL DEFENDANTS**

(AGAINST DEFENDANTS GINSBURG, KETCHAM AND REA)

91.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

92.     Defendants Ginsburg, Ketcham and Rea charged an unreasonably high fee to Plaintiffs based on its motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by the Equal Protection Clause.

93.     In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were not paid by Plaintiffs, which constituted discrimination based on speech in violation of the Fourteenth Amendment.

94.     In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted discrimination based on speech in violation of the Fourteenth Amendment.

95.     As a result of Defendants Ginsburg, Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda and the adjacent Town School, and suffered emotional distress.

### EIGHTH CAUSE OF ACTION

### 42 U.S.C 1983 – EQUAL PROTECTION – DISCRIMINATION BASED ON SPEECH – MONELL LAIBILITY

(AGAINST DEFENDANT CITY)

96.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

97.     Defendant Ginsburg either charged or ratified Ketcham and/or Rea's charges of unreasonably high fees to Plaintiffs based on his motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by the Equal Protection Clause.

98.     In addition, Plaintiffs allege that the unconstitutional actions by Ginsburg, Ketcham, and Rea were caused by inadequate and arbitrary training, supervision and discipline of these individual defendants by their employer City and County of San Francisco.

99.     Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were not paid by Plaintiffs, which constituted discrimination based on speech in violation of the Fourteenth Amendment and a violation of the First Amendment.

100.     In addition, Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted discrimination based on speech in violation of the Fourteenth Amendment and a violation of the First Amendment.

101.    In addition, Defendant City and/or Defendant Ginsburg had an established policy and practice of restricting the use of the Palace of Fine Arts to only events that Ginsburg and/or lower level administrative employees felt were acceptable to them and viewed as non-commercial and worthy of the Palace, without any rational basis for such decisions, and instead just the gut feeling of Ginsburg and City employees.  Such policy allowed the Palace of Fine Arts to be used for such "undesirable" events if the permit seeker would pay unlawful and arbitrary large sums of money to the City and its chosen charities.  This policy violates the Fourteenth Amendment and the First Amendment of the United States Constitution.  Plaintiffs were the victims of this policy in that Defendants forced them to pay exorbitant fees for their wedding and reception.

102.    As a result of Defendant Ginsburg's ratification of the foregoing wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda and the adjacent Town School, and suffered emotional distress.

**NINTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSTITUTION - ART. I, SECTION 2**

(AGAINST DEFENDANT CITY)

103.    Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

104.    San Francisco Parks Code section 12.22, on its face and as applied, violates Article I, Section 2 of the California Constitution.

105.    Defendants Ginsburg, Ketcham and Rea charged an unreasonably high fee to Plaintiffs based on their motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by Article I, Section 2 of the California Constitution.

106.    In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were

not paid by Plaintiffs, which constituted a violation of Article I, Section 2 of the California Constitution.

107.    In addition, Defendants Ginsburg, Ketcham and Rea restricted Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted a violation of the Article I, Section 2 of the California Constitution.

108.    As a result of Defendants Ginsburg, Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda and the adjacent Town School, and suffered emotional distress.

109.    Defendant Ginsburg either charged or ratified Ketcham and/or Rea's charges of unreasonably high fees to Plaintiffs based on his motivation to discourage the use of Pay-Per-View, and/or to punish the Schons for using Pay-Per-View, and/or to punish the Schons for publicizing the time, date and location of their wedding.  Such conduct was discrimination based on speech, which is prohibited by Article I, Section 2 of the California Constitution.

110.    In addition, Plaintiffs allege that the unconstitutional actions by Ginsburg, Ketcham, and Rea were caused by inadequate and arbitrary training, supervision and discipline of these individual defendants by their employer City and County of San Francisco.

111.    Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from appearing in photographs depicting the Palace of Fine Arts, even where photographers were not paid by Plaintiffs, which constituted a violation of Article I, Section 2 of the California Constitution.

112.    In addition, Defendant Ginsburg either restricted or ratified the restrictions imposed by Ketcham and/or Rea prohibiting Plaintiffs from using part of their rented facility for the "Sexy" portion of their wedding theme, even though there was nothing profane about their décor, which constituted discrimination based on speech in violation of Article I, Section 2 of the California Constitution.

113.     In addition, Defendant City and/or Defendant Ginsburg had an established policy and practice of restricting the use of the Palace of Fine Arts to only events that Ginsburg and/or lower level administrative employees felt were acceptable to them and viewed as non-commercial and worthy of the Palace, without any rational basis for such decisions, and instead just the gut feeling of Ginsburg and City employees.  Such policy allowed the Palace of Fine Arts to be used for such "undesirable" events if the permit seeker would pay unlawful and arbitrary large sums of money to the City and its chosen charities. This policy violates the Fourteenth Amendment and the First Amendment of the United States Constitution.  Plaintiffs were the victims of this policy in that Defendants forced them to pay exorbitant fees for their wedding and reception.

Wherefore, Plaintiffs pray for the injunctive relief set forth herein.

## TENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSTITUTION - ART. I, SECTION 7

(AGAINST DEFENDANT CITY)

114.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

115.     San Francisco Parks Code section 12.22, on its face and as applied, violates Article I, Section 7 of the California Constitution.

116.     Defendant City had a policy and practice of delegating unfettered discretion to its employees to set permit fees without narrowly drawn, reasonable and definite standards. Defendant City's policy and practice was to leave the decision of how much to charge for the permit to the whim of the administrators.  There are no articulated standards in the City's established practice for setting fees, and the City's longstanding practice is to allow administrators to use their own unfettered discretion to set fees.  Administrators are not required to rely on any objective factors, and their decisions are unreviewable.  Defendant City's failure to set and enforce policies regarding setting of fees caused Defendants to impose the unjustifiable and outrageous fees because of (a) Defendants' dissatisfaction with, and personal opinions about, Plaintiffs' decision to broadcast their wedding on Pay-Per-

View, (b) Defendants' view of whether Plaintiffs' wedding was the type of event that was in their opinion deserving of taking place at the Palace of Fine Arts, or was crass and viewed as too "commercial," and (c) Defendants' perception of Plaintiff's economic status and fame.

117.     The unconstitutional actions set forth above were ratified by Defendant Ginsburg acting in his official capacity as General Manager of the San Francisco Recreation and Parks Department, and the final decision maker of the Recreation and Parks Department.

118.     In addition, Plaintiffs allege that the unconstitutional actions by Ginsburg, Ketcham, and Rea were caused by inadequate and arbitrary training, supervision and discipline of these individual defendants by their employer City and County of San Francisco.

119.     As a result of Defendant City's unlawful policies and practices, and Defendant Ginsburg's wrongful and malicious actions, and the ratification by Defendant Ginsburg of Defendants Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda, and suffered emotional distress.

120.     Wherefore, Plaintiffs pray for the injunctive relief set forth herein.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF UNRUH CIVIL RIGHTS ACT

(AGAINST ALL DEFENDANTS)

121.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

122.     All persons are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments, including both public and private entities.

123.     Defendants did not provide full and equal access to its parks to Plaintiffs as were provided to other similarly situated parties.  Instead, Defendants restricted Plaintiffs' use of the facilities and charged unreasonable and exorbitant fees for such facilities, based on Defendants' whims and because of (a) Defendants' dissatisfaction with, and personal opinions about, Plaintiffs' decision to broadcast their wedding on Pay-Per-View, (b)

Defendants' view of whether Plaintiffs' wedding was the type of event that was acceptable to them and deserving of taking place at the Palace of Fine Arts, or was crass and in their opinion too "commercial," and (c) Defendants' perception of Plaintiff's economic status and fame.

124.    As a result of Defendant City's unlawful policies and practices, and Defendant Ginsburg's wrongful and malicious actions, and the ratification by Defendant Ginsburg of Defendants Ketcham and Rea's wrongful and malicious actions, Plaintiffs were forced to pay irrational sums to hold their wedding at the Rotunda, and suffered emotional distress.

125.    Wherefore, Plaintiffs pray for the injunctive relief set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court:

(a) Enter judgment against the defendant;

(b) Enter a declaratory judgment declaring the acts of the defendant to be a violation of plaintiffs' rights under the Constitutions of the United States and the State of California;

(c) Enter a declaratory judgment declaring that California Parks Code 12.22 is unconstitutional on its face;

(d) Enter a declaratory judgment declaring that California Parks Code 12.22 is unconstitutional as applied to Plaintiffs;

(e) Enter a declaratory judgment declaring that Plaintiffs owe no further payment to Defendant City and County of San Francisco;

(f) Issue appropriate injunctive relief;

(g) Award Plaintiffs damages according to proof;

(h) Award Plaintiffs punitive damages as against Defendants Ginsburg, Ketcham and Rea;

(h) Award Plaintiffs costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1988 and other relevant statutes; and,

(i) Order such other and further relief as the Court deems just and proper under the circumstances.

### JURY TRIAL DEMAND

Plaintiffs hereby demand that this matter be tried by a jury as to all claims for damages.


Dated: February 6, 2015          By:          /s/ Rebecca Coll
                                              JAMES A. QUADRA, State Bar No. 131084
                                              REBECCA M. COLL, State Bar No. 184468
                                              QUADRA & COLL, LLP
                                              649 Mission Street, 5th Floor
                                              San Francisco, California 94105
                                              Telephone:  (415) 426-3502
                                              Facsimile:  (415) 795-4530
                                              jquadra@quadracoll.com
                                              rcoll@quadracoll.com

                                              *Attorneys for Plaintiffs*

Complaint